The next case this morning is number 519-0537. Stowmatt v. Sentry Insurance. Arguing for the appellant, Kent Stowmatt, is Lanny Dar. Arguing for the appellee, Sentry Insurance, is Michael Badesky. Each side will have 20 minutes for their argument. The appellant will also have 5 minutes for rebuttal. You will see the digital timekeeping device on my screen. When time has expired, I will bang the gavel. Finally, please remember, no photographs and only the clerk of the court is permitted to record these proceedings today. Counsel, are you ready to proceed? Yes, your honor. You may proceed. May it please the court, counsel. Good morning. My We are here today because a down on his luck father, whose family owned no motor vehicles, thought it was wise to purchase insurance coverage because his son was of driving age. And it would be easier for them to borrow vehicles if they could tell people they were insured. However, when he went to use that coverage, when his son was involved in an accident, he was told that there was no coverage for his son's injuries. And there was no coverage for the medical bills he incurred on behalf of his son. He wasn't the driver at that time, or was he? No, the facts of the case are that Bradley Stromat, the son, was riding to school with his friend, Michael Kaddish. Kaddish ran a stoplight, a wreck ensued. Bradley was injured, went to the hospital. So this family owned no vehicles. Kent owned no vehicles. Bradley owned no vehicles. And that's that they could borrow vehicles because his son was of driving age. They had relatives that they would let him borrow and they wanted to be able to say that they had insurance. But it's an axiom of Illinois insurance law that will constrain an insurance policy. A court must consider the reasonable expectations of the policyholder and the policy must be construed as a whole. In this case, the record is essentially the plaintiff and defendant's pleadings and copies of the insurance policy. And the court felt that that was enough to grant judgment on the pleadings, even though the standard for granting judgment on the pleadings would be when there was no material fact in dispute, and you could simply review the transcript or the policy and make a determination there. It is our contention that that was an inadequate record in this case, the inner judgment on the dispute as to what plaintiff intended to purchase. And there was a dispute as to whether plaintiff was aware of and accepted the terms of the final non owner endorsement, which was appended to the policy. Without evidence on these points, we think it was improper for the court to grant judgment on the pleadings, and that the judgment should be reversed. As the court will be aware, in this case, this was one policy that originally had multiple definitions of who is an insured as it progressed through the policy. Originally, it covered Kent Stromack, the father, and his son, under a family provision, those residing in his household. And then it changed throughout the policy three or four times until the very end. It had an Illinois non owner endorsement, which effectively took away coverage and said it was only for the named insured who would be Kent Stromack. And the court lower court found that if you consider the whole policy as a And it was confusing because it did have all these multiples of changes. But the court also found that the endorsement would control over the body of the policy. And therefore, she was obligated to just look at this endorsement and construe it in isolation. And she felt when construing it in think that violates the rule of insurance law, which is a policy must be considered as a whole. And the defense has always argued, well, the plaintiff was obligated to review the policy when he received it. And if he had any objections, he was to promptly bring that or if he noticed any clarification or change to the policy. And in this case, when Kent Stromack did not do that, it's the defendant's position, hey, you got what you bought. For that rule, which is articulated most recently in in crop versus American insurance, or American applies when the insured can be reasonably expected to understand the terms of the policy. And in this case, there was no finding by the court that he was aware of this or that he had the ability to understand the terms of this policy, how it changed and progressed throughout the case. And she felt that finding the judgment on the pleadings should not never have been granted. There were just disputed issues of fact here. As I stated earlier, that the court did find that the policy was ambiguous. But found that that ambiguity was rendered irrelevant because her concentration was just on that final non-owner endorsement. But once again, that violates the rule of law that the policy should be construed as a whole and not and the reasonable expectations of the insured to be given consideration. Mr. Jarre. Yes. You said that the court made a finding that the policy was ambiguous. Yes. Well, in her initial order, and I'm trying to find that in my brief. Well, the first line of the second paragraph, that order of July 8th, 2019, says, while the court agrees with plaintiffs, the contract has written with almost four different definitions of the insured person in each of the different endorsements does appear ambiguous. The case law by the defendants holds that an insurance policy must be construed in conjunction with all endorsements in order to determine an effect of the insurance contract. If there is any ambiguity between the policy and the endorsement, the endorsement will control. And it's our contention that the policy as a whole, once it's found to be ambiguous, the trial court should have stopped at that point, denied the motion for judgment on the pleadings, and construed coverage in favor of the plaintiffs. And we wouldn't be here today. But we think it was improper to singularly focus on this non-owner endorsement. When you talk about the non-owner endorsement, are you talking about that section of the policy, the one page of the policy, or are you talking about the deck page? We are talking about that one section of the policy. It says, it's called the non-owner endorsement Illinois. Okay. Thank you. And we believe that that policy was ambiguous in the context of the entire policy. Because, I mean, I don't know how a layman would go through this whole policy that starts out giving them his son coverage. And at the end, it turns out it's just for him. But once again, when we talk about an endorsement, I think many of us, the practice law are talking about, we think of, at least in an auto context, a restricted driver endorsement or something that is added to a policy after it's issued. In this case, that's not what happened here. By all outward appearances, this was just one policy that was issued at the time that it was purchased. And it had all of these different definitions in it. It was later never brought to his attention that there was an endorsement to the policy that changed the whole body of the policy. And the law on this is pretty clear that the rule that an endorsement will control over the body of the policy only applies when the insured knew and accepted the change to the policy. And once again, that would be a fact question. And there's nothing in the record to support the conclusion or finding that he was aware of this non-owner endorsement or that he accepted it. But even that aside, and we think we would prevail on all those points I just discussed, if you consider that Kent, I mean, I'm sorry, if Bradley, the son, was not an insured, Kent, the father, should still be allowed to recover for the medical expenses he incurred on behalf of his minor son and also for his son's injuries. Because as this court is aware, those claims can only be bought by the parent. Bradley Stromath, the son, had no ability to bring these actions in his own behalf. So under the uninsured motorist provision of this policy, Kent, the named insured, should have been allowed to make these claims. Because certainly, as far as the medical bills go, that's an economic harm that was personal to him. That was not a claim for which his son was obligated on or could bring on his own behalf. Only Kent could bring that claim, and that was a claim that was personal to him and which he was obligated on. And apparently, when you read the article, I mean, when you read the court's order, she says that plaintiff's counsel made a compelling argument that Bradley Stromath should be afforded coverage under the uninsured provision as he is a minor and the father is statutorily responsible for his medical bills. This court could find no case law or other statutory authority to support this position. Well, I respectfully disagree with the court. I mean, the Family Expense Act and the progeny of cases that say that a father, they were cited to the court that the father was the one who could bring the claim under these circumstances, not the son. And the Supreme Court has said, and I always butcher this case, so I'm going to spell it as Josephus, T-H-O-U-S-A-V-E-T-H for State Farm, which is a 2018 Supreme Court case, states that a claim of a named insurer may not be excluded under a policy he purchased. And that was, you know, earlier in Schultz v. Illinois Farmers, the Supreme Court made that same pronouncement. So Bradley, I'm sorry, Kent, the father, is the named insurer under any interpretation of his policy. He is the one that holds this medical expense claim. He is the one who holds the claim for his son. They can't exclude his personal claim, and it is a personal claim to him based upon an exclusion, because it's his claim. So under these circumstances, we would ask that the court vacate the lower order, find that the policy is ambiguous, as read as a whole, as the lower court did, and find coverage exists. Or in the alternative, it's remanded back to the trial court for further proceedings. Thank you. Mr. Donovan, I have a question. You've told us about your client's intent in the purchase of this policy, but I could not find anywhere in the record where an affidavit was submitted or anything of that nature on behalf of your client. It was not. No, there was nothing missed. It was not. But once again, these records, the pleadings, I mean, the standard for a judgment on the pleadings is whether the pleadings and the policy resolve all material facts. And we were claiming uninsured, underinsured under the policy. The court found it to be ambiguous, or we feel the court found it to be ambiguous, and then it wasn't necessary to submit the intent. It was the obligation of them to exclude those possibilities. But doesn't the, I mean, haven't what you argued here today, doesn't that go to what your client intended to purchase versus what he was actually given? I mean, I understand the law of contracts aside for a moment. Once you have an ambiguity and the court found that, are you saying that that in and of itself is enough to allow the case to proceed rather than issue a judgment on the pleadings? Yes, because the whether or not Bradley wasn't insured, they would have to, and that was the dispute, she would have to find that Bradley was insured. Okay, thank you. I see no other questions. Thank you, counsel. Thank you. Counsel, we're ready to proceed. You may proceed. Thank you, Your Honor. May it please the court, counsel. My name is Mike Badesky. I'm representing the Appalachian Viking Insurance Company of Wisconsin. The first thing I'd like to mention here, Your Honors, is there is no legitimate factual issue here. The trial court correctly ruled on the pleadings. We attach the application for the insurance to the pleading, and the application clearly states, and it was policy. It says if this policy type is indicated above, the policy provides the selected coverage for only the name insured when driving non-owned cars. So that was the application that he signed and submitted, and sure enough, that's the policy he received was to name only Mr. Go ahead. I didn't mean to cut you off. Go ahead. Yeah, so that's what he received was a policy that only covers him for non-owned cars. Again, it's a kind of a unique situation because Mr. Stromat does not own a vehicle, so he buys insurance which covers himself. So he received his policy in June of 2017. Again, the only name insured on the deck sheet is Kent Stromat. The only driver listed on the deck sheet is Kent Stromat. Mr. Badesky, now I'd like to ask a record C-126 for your reference. There's a signature. It looks like by the agent and the insured of June 30th, 2017, and in the very, it says the named insured confirmation. So this is the second page, I guess, of the application, and it says, I understand that I must report to the company all persons of legal driving age or older who live with me temporarily or permanently, including all children at college. I mean, and then it goes on. I understand that I must report all persons who are regular operators of any vehicle to be insured regardless of where they reside. Why would you have such a paragraph in there which the insured and the agent both sign on the application if this is limited to only one person? Sure. This is a form application, Your Honor, and again, but it's a unique coverage. There's not that many policies like this sold in Illinois because, I mean, there's a lot of people in Chicago, for example, don't have cars, but in Southern Illinois, we all know almost everybody that drives has a car of some kind, but the point is it's a form application. That's something that any insurance company would want to know because typically in almost every policy except for this kind here, the insurance is going to cover the vehicle, and the carrier is going to want to know all potential drivers in a household because they could potentially drive the car for a premium. It's a form. It's a standard form. That's the answer to the question, but isn't that the problem here? Even the policy that you attach in your pleadings and the plaintiff attaches in his pleadings, I mean, you've got multiple definitions coming. I mean, do you really expect that if the court finds an ambiguity based on all these definitions that there can be judgment on the pleadings in light of all of these definitions and even the application talking about other drivers? Yeah, Your Honor, there's really not an ambiguity to begin with because the trial court, when she entered her final order in the case, this is C-162, she mentions that a plaintiff argues once ambiguity is found to exist, it was compelled to find coverage regardless of the fact ambiguity is created by the endorsement. It says the court disagrees. The language of the endorsement controls over contradictory language elsewhere in the policy, and therefore there is no ambiguity. So that's what Judge Smith put in her order. Again, that's at C-162, but just so we're clear on this issue, in order to find an ambiguity, there has to be a conflict between a definite, in the coverage at issue, a definition in the policy somewhere that conflicts. Counsel, by any chance, did you move the microphone? We're having a little difficulty in volume. I'm sorry, Your Honor. It's still not good. Okay, let me try to speak up here and get a little bit closer here. That'll help. Okay, so anyway, what I'm trying to say is this, Judge, just like every other insurance policy in the state of Illinois for autos, there's a standard form. It gets customized by endorsements, depending on the type of vehicle, if there's an excluded driver, any number of reasons. This is how insurance policies are issued because, again, there's millions of cars on the road in Illinois, and no insurance carrier can write a script policy for each and every insured. That would just be impossible because, again, there's millions of people that have to be insured to drive cars in Illinois, okay? So the way the policy is drafted, you have a standard form policy, but because it's a unique coverage, because Mr. Stromat does not even own a car, and he's only insuring himself, there is an endorsement that is attached to the policy that restricts coverage only to him, and that's the named non-owner endorsement, Illinois. So again, what we're talking about here is a claim for MedPay benefits and a claim for uninsured motorist coverage. So the fact that the original sort of body of the policy names would include, you know, resident relatives, we have an endorsement that restricts and limits the coverage to only the insured person, which is the insured person as defined as you, which is the only person shown as the named insured on your deck page. So in other words, the only change to the policy that's relevant here is, again, MedPay and uninsured motorist, and there's no ambiguity, because the endorsement controls over the body of the policy. This was added to the policy because, again, it's a unique situation where Mr. Stromat does not even own a vehicle, and he's only insuring himself. And at what time, at what point was that endorsement added to the policy? It was added immediately, Your Honor, and that's another, that's a good point to this, because Mr. Darst says, oh, you know, there's an issue. We have to find out what his intent was. Did he understand the endorsement? Did he, you know, did he agree to the endorsement? Those cases talk about changes in policies midstream. In other words, once the policy is issued, something happens later on. We had the commercial case where the, I think the son of the driver wanted to exclude his son from driving, and that was like a midstream change in the policy. So there's an issue there. Well, did the insured agree to change the policy midstream? You know, what was the agreement there? Was there consideration for a change of the policy? Here it's completely different, because from the very beginning of the policy in June, Mr. Stromat, per his application, plus the deck, the policy sent to him indicating on the deck sheet, he's the only person insured. So this is from the word go. Mr. Stromat was the only person insured. The policy wasn't changed midstream later on, like the cases that Mr. Darr cites to in his brief. This was the original policy issued, no changes between June and September when the accident occurred. So again, what was issued to Mr. Stromat was consistent with his application. And this argument about, well, you know, he didn't understand it, or he needed, you know, what is his reasonable understanding, his to begin with, Judge, because, well, you know, there's different definitions. Well, if you just, the first page, I mean, before we even get into reading this thing, okay, the first page says, the coverage listed on this declarations page apply only for the named insured while driving non-owned cars. So this is page one. Before Mr. Stromat would even start reading this thing, it tells him he's the only guy that's insured. It says named insured, Kent T. Stromat. And if you just go to the middle of the paragraph, it says it only applies for the named insured while driving non-owned cars. His son is not named here. So he knows immediately. He doesn't even have to get into a big, you know, well, my gosh, you know, this is long to read. I don't understand it. It's confusing. You don't even get there because the guy, I mean, just look at page one. And he's obligated to read this incidentally, according to the Illinois Supreme Court, American Family versus Crop says the insurance immediately has to read over their policy. And if there's an issue, a question, a problem, they have to bring that to their agent's attention because the Illinois Supreme Court says if there's any kind of a negligence claim or claim against the agent for getting the wrong coverage, that two-year statute runs immediately on receipt of the policy. Okay. Not when the accident occurs, you know, later, months later, a year later. So the insured is obligated to bring a problem to the attention of the agent as soon as they get their policy because that's when the statute starts to run. Let me ask this question, then why would you have that situation where are there any other drivers in the household if it only applies to him? And is that with all policies or just this policy? That about the other drivers? Right. It's a standard form because, again, Judge, any insurance company, they're going to want to know any drivers. This is a little bit of a unique... Do you know any drivers? To me, it sounds, why would you put that in the policy at all if he's the only one covered under the policy? Why would they ask that question? Well, they don't make... To answer your question, Your Honor, they don't make specific forms that I'm ever aware of just for this type of coverage. When somebody goes to buy insurance from an insurance agent, they're going to have a standard form just to... So this is the standard form? Yeah, for standard applications. So then all the other... The question is that, so all the other... All your other forms have named all the members that could drive the car are members of the household. It is or it isn't? I don't know. Is it two different forms? Well, it's a standard question that an insurance company is going to want to know because it's right there on the... It's right there on the end because, again, they're going to want to know... They're going to want to get all the information from the insured when they come in, and they're going to try to find out what kind of coverage the insured wants. If he wants this unique type of coverage because he doesn't have a car, he's going to get sold this unique type of coverage. I thought he was wanting just like the standard kind of coverage you get if you have a car. This is a different policy then. Because it has the endorsement, right? Yeah. Yeah. Well, no, this is the same policy, but now you're trying to amend it with the endorsement, right? That's correct. That's correct. So, your arguments about what's contained in an ordinary policy, as Justice Welsh just asked you about, that's not in the record anywhere. That's why I asked the question. This is a standard policy that you issued, and then instead of crossing out the relevant portions that would have limited this, you now try to add this endorsement that the court hooked onto for declaratory relief. But let me ask you this. You say that from the get-go, the plaintiff knew that he was the only insured driver, and the word on the deck page is name of insured, right? Named insured, Kent T. Stromat. So, but in the policy, it says insured. Is you a relative? Any other person occupying your insured car, etc. So, even though it says insured on the deck page, within the get-go of the policy, it continues to talk about a definition of insured being you or relative. Right. If there's a conflict between the body, the policy, and the endorsement, the endorsement controls. It has the name non-owner endorsement Illinois. This is a standard. This is how policies are issued in the state of Illinois for years and years. I mean, there's nothing unusual about in terms of endorsements changing a policy. This is how millions of policies have been are issued in Illinois. I mean, this is not that unique, frankly, to change a policy this way. Endorsements are common because, again, it's important. But if there's a conflict, Mr. Badesky, if there's a conflict between the endorsement and the policy, including the deck page, then isn't it true that there's a question of fact or at least some issue to be resolved by the jury under Illinois law where a conflict exists or an ambiguity? There's only a conflict if you could, if there's a reasonable interpretation one way versus the other. You just can't say, well, I disagree with it. So, there's a conflict. So, now we can't have a judgment on a policy. There has to be a reasonable interpretation. One side says there's coverage. The other says there's not coverage. There's absolutely zero reasonable difference in terms of a reasonable interpretation because if you go to the endorsement, it says definitions used, you and your means only the person shown as the name insured on your declarations page. And that's consistent with, you go to MedPay, insured person means any of the following, you while occupying your insured car, you as a pedestrian when struck by a motor vehicle, you go to uninsured motorist coverage. Definition one is replaced by the following. So, the definition in the body is replaced. Insured person means you. Okay. So, that's the only, you is the person on the deck sheet, the name insured on the deck sheet. So, the only change in the policy that's relevant here because we're talking about MedPay and uninsured motorist is the definition of insured in the body of the policy versus the definition in the endorsement. Because the endorsement is different from the body of the policy, the endorsement controls. I mean, every case in Illinois says that. The only way you could have a theoretical ambiguity is if there's some kind of a potential conflict where it says, well, no, maybe, you know, like on the deck sheet, if the son was listed as an insured, well, maybe the kid would be insured then under the policy. Kent Stromat is the only person that's listed as the name insured. And when you go to the endorsement, it changes the definition of who is an insured in the main body. And the only person that is insured is the named insured. So, it's consistent. The deck sheet is consistent with the endorsement. Yes, the endorsement changes the definition of an insured person on the body of the policy, but that's the purpose of an endorsement. And that's how insurance policies, auto policies, all policies are issued in the state of Illinois. That's just the standard how it's done. So, there's really no basis for ambiguity to begin with. Just hypothetically, let's assume that there's no conflict and no ambiguity in the policy. I do want to ask you about the coverage for the MedPay. I mean, I'm sure you're aware of the Family Expense Act, right? Where parents are obligated for the medical bills of their children under the age of 18. Your insurance company has denied the MedPay. And it seems to me the State Farm case, and I'm not going to butcher the name, but it's H-O-U-N-S-A-B-A-T-H, cited by the plaintiff. It seems that the Illinois Supreme Court has made it pretty clear that medical pay coverage is to be paid under the UIM coverage. How do you distinguish that and say that there's no coverage in this policy? Yeah, and the Tonsveth, we'll call it the T case, and I'm not good with the name either, Your Honor, but the point is that was named insured. Okay, so Tonsveth was a named insured under the policy here. And so he was injured. Yeah. Right, but he wasn't injured. The named insured was not injured. And Tonsveth, that person was hurt. That was the named insured. And basically, the Supreme Court says you can't exclude coverage for a named insured because Tonsveth was the person that was insured. The particular case, the injury was suffered by a non-insured in the policy, and that's the critical distinction, okay? Because the UIM statute, it protects insureds, not non-insureds. The family expense statute is a derivative claim, okay? So the injuries are to a non-insured son. But as you said, it is a derivative claim of the fathers. So the father is the insured, the claim is a derivative claim, it belongs to the father, and the public policy of the state of Illinois is to cover uninsured motorist claims. So since it is a derivative claim, I don't know how we distinguish that. Well, yeah, it's distinguishable because it's an uninsured motorist claim. The uninsured is the son, is Bradley Stromat. The responsibility, even though the father might be responsible for the medical bills, that statute, the family expense statute, doesn't give a cause of action to the insured. It just says the adult, the parent, is responsible for the medical bills. It doesn't create a cause of action in him. And like the case I cited, which is State Farm versus George, you had an uninsured motorist claim. The daughter brought a claim for the mother who was killed by an accident, and the court said claims derivative of bodily injury to someone not insured under the policy are outside the intended scope of uninsured motorist provisions, and excluding such claims does not violate public policy underlying the uninsured motorist acts. So the bottom line is, the injury was not to the named insured. He's got injuries, he's got medical bills, but the UM statute, the public policy behind the uninsured motorist statute is for the benefit of insureds, not non-insureds. And that's the critical distinction here. Again, the Family Expense Act does not create a cause of action in favor of Mr. Stromat, it just creates some financial responsibility on him for the medical bills for the son. Because the son is not an insured under the policy, policy benefits are not available, the coverage only applies to the named insured, and that's consistent with both uninsured motorist claim and the med pay claim. So the medical bills incurred by somebody that's not an insured would not be covered under the policy, and under the State Farm v. George case where you have the death of the mother, a claim brought by the daughter, the court said that that, and that's consistent with other states as well, because they did a survey of a number of different states in the union where this has come up before. But that didn't deal with a minor, minor's injuries, that was the mother's claim. Well, actually it was the minor's claim for loss of society for when her mother died in the accident. That wasn't a pecuniary loss that was recognized by a family expense statute, that was a, I forget the word, non-pecuniary loss. That wasn't something that was supposed to be covered by the but the language of the, and the policy behind the UM statute was the question of whether there's going to be coverage because it was an uninsured motorist claim to begin with. It didn't deal with medical bills, right? It did not deal with medical bills, so you're right on that, Judge. It didn't deal with a minor that forced a derivative claim, right? Well, it was a derivative claim because that was the holding of the court because it wasn't, because the injury was to a non-insured. Remember, the mother, the mom was not insured under the policy, only the daughter and the father were. But I understand, but the cause of action arose from a completely different kind of statute. As I recall in George, it was a, it was a conscious pain and suffering or loss of, it was a loss of society kind of claim, not a medical bill claim, right? You're right. No, that's right, Judge. Yeah. Counsel, your time has expired and we have no further questions and the case will be taken under advisement, a order or opinion in due course. I think Mr. Darr gets, does he not get any extra time? Oh, I'm sorry. I jumped the gun on that one. It confused me, but now I want to tell you that your volume came back for some reason and I don't know why. I'm sorry, rebuttal. Thank you for telling me. I will be brief. I won't take five minutes. I would just point out a couple of very quick matters. State v. George, I agree. I mean, that was a loss of society claim for a mother who did not even live in the same household with the named insurer. It really has no application to this case, but to the extent it would have any conflict with the crop case or with the tea case, as Mr. Badesky has appropriately designated it, the 2018 case would certainly, by the Supreme Court, would certainly take precedent over this 2002 appellate court case. And then the last point I just want to make, the defense's argument seems to be, well, this is the kind of standard application that's always used and things along those lines. That's not an excuse. I mean, they can, if they're making money off of these things, they can have clarification and understanding. I mean, I'm sure they've got a separate policy for homeowner's insurance. I'm sure they've got a separate application for boat insurance, motorcycle insurance, things along those lines that would deal with drivers that are living in the household. They're going to be driving vehicles as opposed to that vehicle. So I just don't think it holds much water to say, well, it's a standard thing. And the fact that, yeah, it is confusing, shouldn't be taken into account in this case. It should be taken into account. And once again, they want to say, well, look at the deck page and it was clear. Only if you can understand an insurance policy, and that's what crop says, that you have to, the court would have to find that he had a reasonable expectation of being able to understand this policy and a policy that constantly changes who the definition is. I mean, the lawyers have been arguing about this. The judge took it under account, took, you know, it's a, it's a confusing policy by any stretch of the imagination, the way it was issued is very confusing. That's all I have. Thank you. Thank you, counsel. Now I can say the case will be taken under advisement. You'll be excused. Thank you. Thank you.